LOUISE A. CHRISTIANO *v.* DOMINIC H. CHRISTIANO.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

 

Argued November 9, 1944—decided February 21, 1945.

 

*Frederick Miles,* with whom, on the brief, was *Mark W. Norman,* for the appellant (plaintiff).

*Leo Nevas,* with whom, on the brief, was *Rocco R. P. Perna,* for the appellee (defendant).

MALTBIE, C. J. On December 15, 1939, the plaintiff was granted a divorce from the defendant on the ground of intolerable cruelty. The judgment found, in a paragraph numbered 4, that the defendant ought to pay her alimony of $15 a week, and it was so ordered. On December 3, 1940, the defendant made a motion for a modification of the order as to alimony on the grounds that there had been a substantial change in his financial situation and that she had been guilty of improper conduct. The trial court, in a memorandum granting the motion, stated: "The annexed transcript of evidence shows that this motion ought to be and it is granted. Order for payment of alimony revoked." A supplemental judgment was rendered which modified the original judgment by striking out paragraph 4 and the order for the payment of alimony. On November 10, 1943, a "Motion for Reinstatement of Alimony" was filed in the name of the plaintiff. This recited that the cause for the previous revocation of the order no longer existed and asked an order that the defendant pay the plaintiff

alimony pursuant to the original judgment. From the denial of that motion, this appeal is taken.

The trial court has found these additional facts: The transcript of the evidence before the court when the motion to modify the order as to alimony was made shows that there was evidence that the plaintiff had frequently been seen intoxicated on the streets of the town where she lived, both in the daytime and in the evening, that she had been arrested on several occasions and that she was a frequenter of taverns. From April, 1942, until November, 1943, the town of Darien had paid her weekly sums of money because she was poor and unable to support herself. The welfare officer of the town made these payments to her personally, going on different days of the week and at different hours; but in a year and a half he had not seen anything to indicate that she was using alcohol or otherwise misconducting herself. He also arranged with a minister to visit her and report to him, but the minister did not appear as a witness.

The "Motion for Reinstatement of Alimony" was signed "The plaintiff, Louise A. Christiano," by a firm of attorneys who filed it. The attorneys are counsel for the town of Darien and at the commencement of the hearing they stated that the proceeding was brought in the interests of the town, as the plaintiff was a welfare client. During the pendency of the matter they filed with the clerk of the court a written "Authorization," which was signed by the plaintiff and which stated that they were authorized to prosecute the motion for her and in her name. The finding states that the trial court could not accept her statement that she was requesting the restoration of alimony in her own behalf, but that the influence seeking it came solely from the town. The court concluded that, as the real party in interest which pressed the motion

was the town and not the plaintiff, it should not be granted, and that too short a time had elapsed since the revocation of the order of alimony to make reasonably certain that the plaintiff's good conduct was characteristic of her future life and not merely indicative of a temporary status; and the court declined to decide whether an order for alimony from income, entirely revoked, could be restored in whole or in part.

The statute authorizing the award of alimony in divorce actions contains this provision: "Any order for the payment of alimony from income may, at any time thereafter, be set aside or altered" by the court in which the judgment was rendered. General Statutes, § 5182. At least when the original judgment contains such an award, this provision has, so far as we know, without exception been treated by our trial courts as giving them a continuing jurisdiction under which the allowance may be changed from time to time as the circumstances of the parties require. A court acts within the scope of such a continuing jurisdiction when, having altered the original decree so that the husband is freed from his obligation, it later orders the resumption of payments upon finding that circumstances have so changed that justice requires this to be done.

It is true that in this case the terms of the supplemental judgment would be capable of an interpretation that it modified the original judgment as of the time it was rendered by the elimination of any provision for alimony. That obviously was not the intended result. To give to it such a construction would mean that payments of alimony previously made had had no proper foundation. We must read it "in connection with its context and the judgment as a whole, and the circumstances surrounding the making of the judgment—the condition of the cause in which it was ren-

dered." 1 Freeman, Judgments (5th Ed.), p. 133. The motion before the court at that time was for a "modification" of the order, and in its memorandum the trial court specifically stated that the "motion" was granted. Moreover, the court attaches to its memorandum a transcript of the proceedings at the hearing and this shows that at its close the court made this statement: "If she is simply spending this money for liquor,—if she had no money, she couldn't buy liquor. It might be a good idea to not give her anything for a while, and then, if she wants to behave herself, she could come in and ask for money." The effect of the supplemental judgment was not to blot out from the original judgment as of the time it was rendered any provision for alimony, so that the motion now before us would amount to an original application for alimony where none had been awarded, but its effect was to provide that, after the granting of the motion, the defendant was freed from his obligation to make payments, leaving it within the power of the court, should it find that circumstances have so changed as to justify such action, to grant such a motion as the one now before us and order resumption of the payments.

As a basis for a consideration of the two conclusions upon which the trial court grounded its decision, we quote from *Scott* v. *Scott,* 83 Conn. 634, 639, 78 Atl. 314, where, speaking of alimony, we said: "In other words, that which was determined by the judgment in the divorce case was an allowance out of the estate of the husband for the support to which the wife was entitled, and of which she had been deprived through the husband's default in the performance of the marriage contract." In *Wright* v. *Wright,* 93 Conn. 296, 300, 105 Atl. 684, we said of certain decisions we had cited: "They are based upon the proposition that a decree of alimony does not establish the existence and amount

of an antecedent debt or liability. The liability arises from the change of *status* accomplished by the divorce, and is incidental thereto. It is based upon the duty of the husband to continue to support a wife whom he has in legal effect abandoned. It defines that duty in terms of money, or property, and decrees specific performance of it; and the State itself has a social and financial interest in the performance of that duty." These statements we repeated in *Cary* v. *Cary*, 112 Conn. 256, 152 Atl. 302, and added (p. 259): "The common-law obligation of the husband to give support to his wife is the foundation upon which alimony in this State rests." To these quotations from our own decisions, we add this from *Romaine* v. *Chauncey*, 129 N. Y. 566, 570, 29 N. E. 826, a case cited in *Wright* v. *Wright*, supra: "During the marriage the husband owes to the wife the duty of support and maintenance although owing her no debt in the legal sense of the word; but under the modern statutes, he does not owe to her the duty of paying her debts contracted before the marriage or thereafter if they are solely hers and not at all his. The divorce with its incidental allowance of alimony simply continues his duty beyond the decree and compels him to perform it, but does not change its nature. The divorce and consequent separation are wholly his own fault, and do not relieve him from the continued performance of the marital obligation of support. The form and measure of the duty are indeed changed, but its substance remains unchanged."

The consideration which apparently loomed largest in the trial court's decision was the fact that the town really instigated the making of the motion before us and its attorneys represented the plaintiff in the proceedings. In the decisions from which we have quoted, it is definitely recognized that the state has not only a

social but a financial interest in making effective provisions for alimony awarded a divorced wife. That interest grows out of the fact that the state or its subdivisions should not be called upon to make expenditures on account of a woman whose former husband, divorced for his misconduct, ought to support her. Where the officials of a town find, among those whom they are called upon to support, a pauper or indigent woman whose divorced husband they believe is under a duty to support her, they not only have the right but it may be their duty to instigate proceedings by her to enforce that duty. In such a situation, there is nothing contrary to law or public policy in the appearance, as her attorney, of counsel for the town, when she has authorized them to act. In *Bridgeport* v. *Equitable Title & Mortgage Co.*, 106 Conn. 542, 138 Atl. 452, we held that there was nothing improper in the fact that counsel representing the plaintiff city in an action to foreclose tax liens were retained and paid by certain individuals interested in the outcome of the litigation, since the officials of the city were in control of the action and there was no conflict of interests. In this case, so far as appears, the plaintiff could have at any time ordered that the motion be withdrawn or could have discharged the counsel appearing for her and secured others; she had the right to control the proceedings; and there is no conflict of interests between her and the town. That the town instigated the proceedings and its attorneys represented the plaintiff affords no reason why she should not be entitled to payments of alimony if the facts justify granting her that relief.

No appeal was taken from the supplemental judgment which freed the defendant from the obligation to make further payments of alimony, and in so far as it has been acted upon it cannot be called into question.

But a decision made by one judge in a case is not binding upon another judge when, later in the same proceeding, he is confronted with a like question. *Santoro* v. *Kleinberger*, 115 Conn. 631, 638, 163 Atl. 107.

We turn then to a consideration of the effect of such misconduct as that of which the plaintiff was guilty upon her right to alimony. The trial court, in its memorandum, states that one basis of the exercise of a discretion to free a husband from the obligation to make further payments of alimony is misconduct of a wife after the divorce, citing 45 L. R. A. (N. S.) 877, notes. There is some authority to that effect where the wife has been guilty of flagrant misconduct. *Weber* v. *Weber*, 153 Wis. 132, 137, 140 N. W. 1052; *Haritos* v. *Haritos*, 185 Wis. 459, 464, 202 N. W. 181; *Lindbloom* v. *Lindbloom*, 180 Minn. 33, 35, 230 N. W. 117. But, at least apart from unusual circumstances, the great weight of authority holds that, in the case of an absolute divorce, misconduct by a wife after the decree is granted is no ground for depriving her of alimony which has been awarded her, and this conclusion is most commonly put upon the ground that after the divorce she no longer is in any way responsible to her former husband for her conduct. *Cole* v. *Cole*, 142 Ill. 19, 29, 31 N. E. 109; *Smith* v. *Johnson*, 321 Ill. 134, 141, 151 N. E. 550; *Pauley* v. *Pauley*, 280 Ky. 66, 71, 132 S. W. (2d) 512; *Suozzo* v. *Suozzo*, 16 N. J. Misc. 475, 477; *Forrest* v. *Forrest*, 3 Bos. (N. Y. Super. Ct.) 661, 671; *Hayes* v. *Hayes*, 220 N. Y. 596, 115 N. E. 1040; *Stanfield* v. *Stanfield*, 22 Okla. 574, 589, 98 Pac. 334; *Cariens* v. *Cariens*, 50 W. Va. 113, 116, 40 S. E. 335. Indeed, as alimony is but the continuance, after divorce, of the duty of a husband to support his wife, it is difficult to see why any conduct on her part after the judgment would free him from that obligation if the same conduct before the divorce would not have

had that effect. Where a woman who has divorced her husband for his misconduct comes into court seeking an order restoring or continuing alimony awarded her in the divorce decree, her general character is not in issue and misbehavior on her part is material only as it affects the matter in litigation. *LaFrance* v. *LaFrance*, 122 Conn. 556, 559, 191 Atl. 334. It is not the function of the court in this civil action to attempt to serve as an agency for her moral regeneration. The matter in litigation is not her conduct in general but her conduct as it affects the duty of her divorced husband. It may be that behavior on her part which amounts to a squandering of money paid to her for her support might justify withholding it from her, for that would directly concern the matter in issue before the court; or the defendant might be excused by conduct so flagrant that, even if he and the plaintiff were still united in the bonds of marriage, he would not be required to support her. See *Gill* v. *Read*, 5 R. I. 343, 346.

The conclusion of the trial court was not based upon the fact that any such situation existed. There is no specific finding that for a year and a half before the hearing the plaintiff had not misbehaved, but the trial court in its ruling obviously assumed that its finding as to lack of observation of misconduct on her part by the welfare agent of the town amounted to this. Its conclusion necessarily involved the conception that the plaintiff was not entitled to alimony until she had established that her reformation was permanent, even though her misbehavior had not been such as would have freed the husband from his duty to furnish support were they still married, and even though her misconduct had ceased. Because of this misconception of the foundation upon which the court should have decided the issue and of the right of the town to instigate

the proceedings, we cannot sustain the court's ruling denying her relief.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.